**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/18/2023
```

---

WEIHAI LIANQIAO INTERNATIONAL COOP
GROUP CO., LTD.,

                   Plaintiff,

           - against -

A BASE IX COMPANY LLC, DAVID A.
APPERMAN, AND ALBERT GAMMAL,

                   Defendants.

---

21 Civ. 10753(VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

     Plaintiff Weihai Lianqiao International Cooperation Group Co., Ltd., ("Weihai" or "Plaintiff") brings this action against defendants A Base IX Company LLC ("Base IX" or "A Base"), David A. Apperman ("Apperman"), and Albert Gammal ("Gammal" and together with Apperman, the "Individual Defendants," and collectively with Base IX, "Defendants").

     The complaint alleges six causes of action against Defendants: (1) breach of contract; (2) account stated; (3) unjust enrichment; (4) unrecovered value from the resale of contracted-for goods; (5) avoidance of the fraudulent conveyance of property; and (6) avoidance of the fraudulent conveyance of funds. (See "Amended Complaint," Dkt. No. 21.)

     Now pending before the Court is Defendants' motion to dismiss Weihai's Amended Complaint pursuant to Federal Rule

of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (See "Motion" or "Motion to Dismiss," Dkt. No. 37.) For the reasons set forth below, the Motion is **DENIED**.

## I.   BACKGROUND

A.   FACTS[1]

Base IX is a New York-based limited liability company with two members, David A. Apperman and Albert Gammal. Base IX operates as an apparel importer that sells to domestic retailers. Beginning in or around February 2019 through October 2020, Base IX entered into a series of contracts (the "Contracts") with Weihai to manufacture and ship to Base IX an array of apparel, which Base IX would then sell to retailers.[2] The Contracts collectively called for Base IX to pay Weihai $6,493,162.87 for goods delivered. Base IX, however, underpaid on the Contracts by $4,345,077.65. Relatedly, from June 2019 until May 2021, Weihai sent Base IX a series of invoices (the "Invoices") representing the amounts due under the Contracts.[3] Base IX received and retained the Invoices without objection.

---

[1] Except as otherwise noted, the following background derives from the Amended Complaint. The Court takes all facts alleged therein as true and construes the justifiable inferences arising therefrom in the light most favorable to the plaintiff, as required under the standard set forth in Section II below.

[2] Additional details regarding the Contracts can be found at paragraphs 10 through 136 of the Amended Complaint.

[3] Additional details regarding the Invoices can be found at paragraphs 137 through 183 of the Amended Complaint.

Separate from these underpayments, in June 2021, Base IX authorized Weihai to sell off all finished but undelivered goods that had been ordered by Base IX. Weihai proceeded to resell these goods for $465,102.89, at a loss of $1,495,766.98 when compared against the contracted price of $1,960,869.87. Following the filing of this lawsuit, $1,000,900 was transferred from the business checking account of Base IX to Apperman's personal checking account.

B.    PROCEDURAL HISTORY

Weihai initiated this action on December 15, 2021. The original complaint named only Base IX as a defendant. (See "Complaint," Dkt. No. 1.) Though Base IX initially filed an answer and counterclaim to the Complaint (see "Answer," Dkt. No. 10), Weihai filed the Amended Complaint, adding Apperman and Gammal as defendants on a veil piercing theory. Defendants then exchanged pre-motion letters with Weihai in anticipation of moving to dismiss the Amended Complaint. (See Dkt. Nos. 26-27.) The parties subsequently informed the Court that they had failed to avoid motion practice and sought full briefing on the motion to dismiss. (See Dkt. Nos. 28-31.) Following the Court's denial of a request from Defendants to stay discovery (see Dkt. Nos. 33-34, 36), Defendants filed their Motion to Dismiss with a Memorandum of Law in Support (the

3

"Memorandum") and the Declaration of David Apperman. (<u>See</u> Dkt. Nos. 37-39.) Weihai filed its Memorandum of Law in Opposition (the "Opposition") and the Declaration of Richard Coppola. (<u>See</u> Dkt. Nos. 41-42.) Defendants then filed their Reply Memorandum in Support (the "Reply"). (<u>See</u> Dkt. No. 46.)

## II.  <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> In other words, a complaint should not be dismissed when the factual allegations sufficiently "raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555.

In resolving a Rule 12(b)(6) motion, the Court's task is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." <u>In re Initial Pub. Offering Sec. Litig.</u>, 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks omitted), <u>aff'd sub nom. Tenney v. Credit Suisse First</u>

Boston Corp., No. 05 Civ. 3430, 2006 WL 1423785 (2d Cir. May
19, 2006); accord In re MF Glob. Holdings Ltd. Sec. Litig.,
982 F. Supp. 2d 277, 302 (S.D.N.Y. 2013). In this context,
the Court must construe the complaint liberally, "accepting
all factual allegations in the complaint as true, and drawing
all reasonable inferences in the plaintiff's favor." See
Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir.
2002). The requirement that a court accept the factual
allegations in the complaint as true does not, however, extend
to legal conclusions. See Iqbal, 556 U.S. at 678.

A district court must confine its consideration "to
facts stated on the face of the complaint, in documents
appended to the complaint or incorporated in the complaint by
reference, and to matters of which judicial notice may be
taken." Leonard F. v. Israel Disc. Bank of N.Y., 199 F.3d 99,
107 (2d Cir. 1999) (internal quotation marks omitted).

### III. DISCUSSION[4]

Weihai raises six claims in the Amended Complaint. Four
claims are brought directly against Base IX and indirectly
against Apperman and Gammal on a veil piercing theory: breach

---

[4] The applicable law in this case is not addressed in the Amended
Complaint. However, the parties apply New York law in their briefing, no
party has suggested that any other state's law should apply, and
Defendants are alleged to all have New York citizenship. (See Amended
Complaint ¶¶ 2-4.) Accordingly, the Court applies New York law.

of contract, account stated, unjust enrichment, unrecovered value from resale of contracted-for goods. The fifth claim is against Gammal for avoidance of the fraudulent conveyance of a property interest, based on his liability for the first four claims on a veil piercing theory. The sixth claim is against Base IX and Apperman for avoidance of the fraudulent conveyance of funds from Base IX to Apperman. Defendants have moved to dismiss each of the claims. For the reasons explained below, Defendants' Motion is **DENIED**.

A. VEIL PIERCING CLAIM

The Court begins by considering whether the Amended Complaint has sufficiently alleged a basis to pierce the corporate veil of Base IX. "The concept of piercing the corporate veil is a limitation on the accepted principles that a corporation exists independently of its owners, as a separate legal entity, that the owners are normally not liable for the debts of the corporation, and that it is perfectly legal to incorporate for the express purpose of limiting the liability of the corporate owners." Morris v. New York State Dept. of Tax'n and Fin., 82 N.Y.2d 135, 140 (1993). This "privilege is not without its limits," however, and "courts will disregard the corporate form . . . whenever necessary to prevent fraud or to achieve equity." Walkovszky v. Carlton,

6

18 N.Y.2d 414, 417 (1966) (internal quotation marks omitted). An attempt "to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners," which in turn "presupposes that the corporation is liable." Morris, 82 N.Y.2d at 141, 144 (internal quotation marks omitted).

"Under New York law, a party seeking to pierce the corporate veil must generally show that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508, 512 (S.D.N.Y. 2005) (internal quotation marks omitted). "[V]eil-piercing claims are generally subject to the pleading requirements imposed by [Federal Rule of Civil Procedure 8(a)], which requires only a short and plain statement of the claim showing that the pleader is entitled to relief." Id. (internal quotation marks omitted). "However, where a veil-piercing claim is based on allegations of fraud, the heightened pleading standard of Rule 9(b) is the lens through which the

allegations must be examined." Id. (internal quotation marks and alteration omitted).

To determine the first element, whether the owners exercised complete domination of the corporation with respect to the transaction attacked, courts "consider factors that would tend to show that defendant was a dominated corporation, such as:"

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.*, issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc., 933 F.2d 131, 139 (2d Cir. 1991). A court is "not required to find that every factor is present, and no one factor is dispositive." Shantou Real Lingerie Mfg. Co., Ltd. v. Native Grp. Int'l, Ltd., 401 F. Supp. 3d 433, 440 (S.D.N.Y. 2018) (citing NYSEG v. FirstEnergy Corp., 766 F.3d 212, 225 (2d Cir. 2014)). "The ultimate question is whether the policy

behind the presumption of corporate independence and limited shareholder liability—encouragement of business development—is outweighed by the policy justifying disregarding the corporate form—the need to protect those who deal with the corporation." <u>NYSEG</u>, 766 F.3d at 224.

To satisfy the second element, whether such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury, the party seeking to pierce the corporate veil must demonstrate "1) the existence of a wrongful or unjust act toward that party, and 2) that the act caused that party's harm." <u>JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.</u>, 386 F. Supp. 2d 461, 465 (S.D.N.Y. 2005) (citing <u>Morris</u>, 82 N.Y.2d at 141-42).

Here, Defendants argue that the corporate veil of Base IX should not be pierced because the Amended Complaint contains only conclusory allegations that fail to state a claim. (<u>See</u> Memorandum at 5-6). Defendants also argue that the veil piercing claims should be dismissed because the Amended Complaint does not allege that the Individual Defendants supposed domination of Base IX was used to commit a wrong against Weihai. (<u>See</u> <u>id.</u>) Lastly, Defendants argue that the transfer of $1,000,900 is not evidence of a

commingling of corporate assets, just evidence of a transfer of funds from Base IX to Apperman. (See id. at 6-7.)

The Court finds that the Amended Complaint has sufficiently alleged a basis to pierce the corporate veil of Base IX at this stage in the case. The Amended Complaint satisfies the first element, whether the owners exercised complete domination of the corporation with respect to the transaction attacked, by alleging that Base IX disregarded its corporate formalities and had funds deposited and removed for personal rather than corporate purposes, such as through the transfer of a million dollars from Base IX to Apperman just three months after the start of this litigation. The "transaction attacked" is not Base IX's alleged failure to make payment on the Contracts, but the undercapitalization of the company. Though the Court agrees with Defendants that the Amended Complaint largely offers a conclusory recitation of the alter ego factors, the allegation as to the transfer of funds from Base IX to Apperman forms a keystone that gives that recitation shape and support. This is particularly true when drawing all reasonable inferences in Weihai's favor, as the Court must at this point. Defendants' argument that this transfer "is not evidence of a comingling of corporate assets" is belied by common sense and undercut by the need to draw

all reasonable inferences in favor of Weihai. Overall, these allegations are sufficient, if accepted as true, to establish Apperman and Gammal's domination of Base IX.

Regarding the second element, whether such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury, Defendants are correct that "the claimed injustice must consist of more than merely the tort or breach of contract that is the basis of the plaintiff's lawsuit." Danuri Tex Co., Ltd. V. Yoco Inc., No. 19 Civ. 9187, 2020 WL 4735190, at *4 (S.D.N.Y. Aug. 14, 2020); (see Opposition at 6-7.) Indeed, the corporate veil would serve little purpose if this were not the case.

Consistent with the equitable purpose of veil piercing however, the "diversion of funds to make a corporation judgment-proof constitutes a wrong for the purposes of determining whether the corporate veil should be pierced." JSC Foreign Econ. Ass'n Technostroyexport, 386 F. Supp. 2d at 476 (citing Godwin Realty Assocs. v. CATV Enters., Inc., 712 N.Y.S.2d 39, 41 (N.Y. App. Div. 1st Dept. 2000)); see also Dafeng Hengwei Textile Co., Ltd. v. Liu, 720 F. App'x. 83, 84-85 (2d Cir. 2018) (summary order). To be clear, the injury does not flow from the idea that "but for the alter ego's domination, the dominated company would be in sound financial

11

health[, r]ather the injury caused by [the] domination [] is that the diverted funds are unable to satisfy [the dominated entity's] liability to [the plaintiff] unless and until the veil is pierced." <u>First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.</u>, 871 F. Supp. 2d 103, 127 (E.D.N.Y. 2012). Here, the Amended Complaint alleges such an injury; Apperman and Gammal diverted $1,000,900 from Base IX into Apperman's personal account. (<u>See</u> Amended Complaint ¶ 200.) As to the second element then, the Court finds that Apperman and Gammal's domination of Base IX was used to commit a wrong against Weihai, resulting in an injury to Weihai.[5]

As a final note, because Weihai's injury justifying piercing Base IX's veil is the alleged diversion of funds from Base IX, the reach of veil piercing liability here is limited accordingly. It may be that the evidence obtained during discovery will reveal a broader pattern of such diversions or will paint a very different picture than what has been sketched so far. However, the Amended Complaint has

---

[5] Defendants' argument that the outflow of funds from Base IX to its vendors alongside loan repayments to the Individual Defendants precludes a finding of domination and control is unavailing. A finding of domination and control does not require there to be no legitimate economic activity by the dominated entity. (<u>See</u> Reply at 3-4); <u>JSC Foreign Econ. Ass'n Technostroyexport</u>, 386 F. Supp. 2d at 472 (explaining how it "is unnecessary for the plaintiff to show that [the entity defendant] conducted no legitimate business in order for the Court to find that [the individual defendants] dominated and controlled [the entity defendant] such that it was their alter ego").

sufficiently alleged a basis for the veil piercing aspect of
the claims to proceed in this case. Accordingly, the portions
of the Motion seeking dismissal of the veil piercing aspect
of the claims are **DENIED.**

    B. THE BREACH OF CONTRACT CLAIM

Defendants argue that the Amended Complaint's breach of
contract claim fails because it improperly lumps all of the
Defendants together and fails to provide each defendant with
notice of their supposed wrongdoing, or the Individual
Defendants with the basis of their liability for the Contracts
to which they are not parties. (See Memorandum at 7-9.)

The Court disagrees and finds that the Amended Complaint
sufficiently alleges a breach of contract claim against
Defendants. The Amended Complaint's "lump[ing]" of Base IX
and the Individual Defendants has not rendered its notice of
claims inadequate under Federal Rule of Civil Procedure 8.
"Nothing in Rule 8 prohibits collectively referring to
multiple defendants where the complaint alerts defendants
that identical claims are asserted against each defendant."
Vantone Group Ltd. Liability Co. v. Yangpu NGT Indus. Co.,
Ltd., No. 13 Civ. 7639, 2015 WL 4040882, at *4 (S.D.N.Y. July
2, 2015) (acknowledging that such collective pleading may
"muddle[] the clarity of the allegations contained within" a

complaint, but holding that such deficiencies did "not rise to the level of a Rule 8 violation").

Accordingly, Defendants' Motion as to the breach of contract claim is **DENIED**.

C. THE ACCOUNT STATED CLAIM

"Under New York law, an 'account stated' refers to a promise by a debtor to pay a stated sum of money which the parties had agreed upon as the amount due." Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owners I, LLC, 637 F. Supp. 2d 185, 197 (S.D.N.Y. 2009) (citations omitted). To bring "an account stated claim, the plaintiff must allege that (1) an account was presented, (2) the account was accepted as correct, and (3) the debtor promised to pay the amount stated." Id. at 198.

Defendants argue that the account stated claim against the Individual Defendants must be dismissed because the Invoices at issue are only addressed to Base IX. (See Memorandum at 9-10.) Defendants further argue that the account stated claim fails in its entirety because the Amended Complaint fails to allege that Base IX confirmed or promised to pay the full amounts at issue. (See id. at 10.)

The Court finds that the Amended Complaint has sufficiently pled an account stated claim against Defendants.

14

Regarding the first element, Weihai alleges that an account was presented to Base IX. (<u>See</u> Amended Complaint ¶¶ 137, 214-221.) As for "the second and third elements of a claim for account stated[, they] may be implied if a party receiving a statement of account keeps it without objecting to it within a reasonable time." <u>Schaefer Hong Kong Trade Co. Ltd. v. Jones Group, Inc.</u>, No. 15 Civ. 0087, 2015 WL 6830178, at *1 (S.D.N.Y. Nov. 6, 2015) (internal quotation marks omitted); <u>see also</u> <u>LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham</u>, 185 F.3d 61, 64 (2d Cir. 1999). Here, Weihai's allegations are no different, and nothing in the authorities cited by Defendants suggest that the principle does not apply here.

Accordingly, Defendants' Motion as to the account stated claim is **DENIED.**

D. <u>THE UNJUST ENRICHMENT CLAIM</u>

The "theory of unjust enrichment lies as a quasi-contract claim and contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." <u>Georgia Malone & Co., Inc. v.</u>

Rieder, 19 N.Y.3d 511, 517 (2012) (internal quotation marks
and alterations omitted).

Defendants argue that the unjust enrichment claim should
be dismissed as duplicative of the breach of contract claim.
(See Memorandum at 10-12.)

The Court disagrees that the unjust enrichment claim is
duplicative such that dismissal is warranted at this point in
the case. It is true that the "existence of a valid and
enforceable written contract governing a particular subject
matter ordinarily precludes recovery in quasi contract for
events arising out of the same subject matter." Clark-
Fitzpatrick, Inc. v. Long Island R. Co., 70 N.Y.2d 382, 388
(1987). Where there is a dispute as to the validity or
enforceability of the contracts, however, a party may bring
an unjust enrichment claim in the alternative to its breach
of contract claim. See Net2Glove Intern., Inc. v. Time Warner
Telecom of N.Y., 273 F. Supp. 2d 436, 466 (S.D.N.Y. 2003). As
Weihai details in its Opposition, (see Opposition at 5-6),
Base IX's Answer to the original Complaint raised the specter
of such a dispute as to the Contracts at issue in this case,
and Defendants' statements to the contrary raised for the
first time in their Reply does not change this fact. (See
Answer ¶¶ 6, 134, 192, 221, 223-24; Reply at 8.) Accordingly,

the Court finds that Weihai's unjust enrichment claim is not duplicative at this stage and Defendants' Motion as to the unjust enrichment claim is **DENIED**.

E. THE RESALE CLAIM

Defendants first argue that dismissal of this claim is warranted because it is an extension of the breach of contact claim and fails for the same reasons as that claim. (See Memorandum at 13.) Given the Court's denial of the Motion as to the breach of contract claim, this argument also fails. Defendants next argue that the contracts underlying this claim were not with the Individual Defendants and that the Individual Defendants are not merchants under the Uniform Commercial Code. (See Memorandum at 13-14.) These arguments fail, given the Court's decision that the veil piercing of Base IX may proceed in this case.

Accordingly, Defendants' Motion as to the resale claim is **DENIED**.

F. THE FRAUDULENT TRANSFER CLAIMS

Section 273(a) of the New York Uniform Voidable Transactions Act ("UVTA") provides that

> A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

17

(1) with actual intent to hinder, delay or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

N.Y. Debt. & Cred. Law § 273(a).

When determining "actual intent" under Section 273(a)(1) of the UVTA, a court may consider factors such as whether "the transfer or obligation was to an insider," or "before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit." Id. at (b). "[I]f the debtor is an individual," an "insider" includes "a relative of the debtor." N.Y. Debt. & Cred. Law § 270 (h)(i).

Defendants raise four arguments as to why the transfer claims should be dismissed. Defendants first contend that Weihai lacks standing under Section 273 to bring a claim against Gammal regarding the title transfer because Weihai was not a present or future creditor of Gammal at the time of the transfer. (See Memorandum at 14-15.) This argument fails, given the Court's decision that the veil piercing of Base IX may proceed in this case.

18

Defendants' second and third arguments are that the transfer claims should be dismissed because to raise a claim under Section 273(a)(2), a plaintiff must allege that the challenged transfer was not made in exchange for fair consideration and must allege that the transferor is insolvent or will be rendered insolvent by the challenged transfer. (See id. at 15-18.) This argument is not relevant because the transfer claims draw on Section 273(a)(1), not (a)(2), and (a)(1) has no such requirements. (See Amended Complaint ¶¶ 231, 234.)

Defendants' fourth and final argument is that the Amended Complaint fails to allege actual intent to defraud with particularity as required by Federal Rule of Civil Procedure Rule 9(b) and fails to allege facts that give rise to a strong inference of fraudulent intent. (See Memorandum at 18-20.)

The Court disagrees and finds that the circumstances of Defendants' "actual intent to hinder, delay, or defraud" have been stated with particularity to satisfy Rule 9(b) and that the Amended Complaint alleges facts that give rise to strong inferences of fraudulent intent. Indeed, as noted above, the Amended Complaint sets forth two classic "badges of fraud" on the part of the Defendants with sufficient detail, given the

19

stage of the case: transfer of over one million dollars from Base IX's business checking account with TD Bank to Apperman's personal TD Bank account, three months after this action was commenced, and the transfer of Gammal's interest in a specific property to his spouse, who as a relative of Gammal qualifies as an insider under the statute. N.Y. Debt. & Cred. Law §§ 273(b)(1) & (4); (see Amended Complaint ¶¶ 197-200, 231-32, 234-39.) The Court notes that while discovery may reveal other explanations for the alleged transfers, for now they create strong inferences of fraudulent intent.

Accordingly, Defendants' Motion as to the fraudulent transfer claims is **DENIED**.

### IV.  ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion filed by defendants A Base IX Company LLC, David A. Apperman, and Albert Gammal (collectively "Defendants") to dismiss (Dkt. No. 37) the Amended Complaint of plaintiff Weihai Lianqiao International Cooperative Group Co., Ltd. (Dkt. No. 21) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **DENIED**; and it is further

**ORDERED** that Defendants are directed to Answer within twenty-one (21) days of the date of this Order.

**SO ORDERED.**

```
Dated:    New York, New York
          18 April 2023
```

_____
Victor Marrero
United States District Judge