UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WEIHAI LIANQIAO INTERNATIONAL
COOP GROUP CO., LTD.,

*Plaintiff*,

v.

A BASE IX COMPANY LLC, DAVID A.
APPERMAN, and ALBERT GAMMAL,

*Defendants*.

21 Civ. 10753 (DEH)

OPINION AND ORDER

---

DALE E. HO, United States District Judge:

The background facts of this diversity jurisdiction case, which was brought under New York state law, are set forth in the Court's post-trial Findings of Fact and Conclusions of Law. ECF No. 188 (the "Trial Order"). Now before the Court is a motion filed by Plaintiff Weihai Lianqiao International Coop Group Co., Ltd. ("LIC" or "Plaintiff") to enforce the Judgment in this case, pursuant to New York CPLR Article 52 ("Article 52"). *See* ECF No. 194 (the "Turnover Motion"). Specifically, LIC seeks an Order that:

> (1) grants LIC a money judgment against Alice Gammal, the wife of Defendant and Judgment Debtor Albert Gammal, in the amount of $1,420,000, or the purported value of Mr. Gammal's interest in real property known as 103 Grant Avenue, Deal, New Jersey (the "Vacation Home"), which LIC maintains was fraudulently transferred to Alice Gammal on February 3, 2022;
>
> (2) finds that Albert Gammal fraudulently transferred his interest in real property located at 1350 East 4th Street, Brooklyn, New York (the "Brooklyn Property") to Alice Gammal and Sarah Sultan on February 3, 2022, sets aside that transfer, and directs the execution sale of Albert Gammal's interest in the Brooklyn Property, with disposition of the proceeds pursuant to further order by this court (subject, potentially to the homestead exemption under CPLR § 5206), and adjudges that the Judgment rendered by this Court on July 22, 2025 for $7,700,539.46 against Albert Gammal, is a lien on the surplus monies from sale of Albert Gammal's interest in the Brooklyn Property; and
>
> (C) directs Santander Bank, N.A., pursuant to CPLR §§ 5225(b) and 5227, to turn over all funds in the personal checking account owned by Judgment Debtor Albert Gammal.

Defendant Albert Gammal, and non-parties Alice Gammal and Sarah Sultan oppose the motion. *See* Mem. of L. in Opp'n to Turnover Mot. (the "Gammals' Opp'n"), ECF No. 224. For reasons stated below, the motion is **GRANTED IN PART and DENIED IN PART**.

**LEGAL STANDARD**

"Proceedings upon execution are governed by Rule 69(a) of the Federal Rules of Civil Procedure." *Mitchell v. Lyons Pro. Servs., Inc.*, 727 F. Supp. 2d 120, 122 (E.D.N.Y. 2010).[1] That Rule provides in relevant in part that: "The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Here, the particular state law procedure that plaintiffs seek to invoke is Article 52 of the New York CPLR, which permits a judgment creditor to bring a post-judgment enforcement motion for a "Turnover Order," to reach assets that belong to the judgment debtor but were transferred to a third party, subject to certain limitations not relevant here. CPLR § 5225(b) states:

> **Property not in the possession of judgment debtor. Upon a special proceeding commenced by the judgment creditor,** against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or **against a person who is a transferee of money or other personal property from the judgment debtor,** where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, **the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor** and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff.

(emphasis added). "This provision furnishes a mechanism for obtaining a money judgment against the recipient of a fraudulent conveyance who has, in the interim, spent or dissipated the property

---

[1] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

2

conveyed." *In re FDIC v. Conte*, 612 N.Y.S.2d 261, 262 (N.Y. App. Div. 1994) (internal quotation omitted).

Furthermore, CPLR § 5202(b) states:

Other judgment creditor's rights.  **Where a judgment creditor has secured an order for** delivery of, payment of, or appointment of a receiver of, a debt owed to the judgment debtor or **an interest of the judgment debtor in personal property, the judgment creditor's rights in the debt or property are superior to the rights of any transferee of the debt or property**, except a transferee who acquired the debt or property for fair consideration and without notice of such order.

(emphasis added).

A party seeking a money judgment against a non-party may proceed by motion and need not commence a separate "special proceeding" under Article 52, "as long as the court has personal jurisdiction over the [non-party]." *CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 469 (2d Cir. 2018).  A request for relief under CPLR § 5225(b) "is like that of a summary judgment motion." *Deflora Lake Dev. Assocs., Inc. v. Hyde Park*, No. 13 Civ. 4811, 2016 WL 7839191, at *2 (S.D.N.Y. June 9, 2016), *aff'd*, 689 F. App'x 93 (2d Cir. May 3, 2017) (summary order). Accordingly, "a court may grant summary relief where there are no questions of fact . . . ." *CSX Transp., Inc.*, 879 F.3d at 473 (quotation marks and citation omitted).

Relief is appropriate under CPLR § 5225(b) "if it can be demonstrated that the debtor is entitled to the property or that the creditor's interest is superior to that of the transferee." *Leser v. U.S. Bank Nat'l Ass'n*, No. 09 Civ. 2362, 2013 WL 3788877, at *8 (E.D.N.Y. July 18, 2013) (internal quotation marks and citation omitted).  It is well-established that § 5225 (b) "provides a procedural mechanism for attacking a fraudulent conveyance by a judgment debtor," *Multibank, Inc. v. Access Glob. Cap. LLC*, No. 17 Civ. 3467, 2017 WL 6028535, at *6 (S.D.N.Y. Dec. 4, 2017) (citation and quotation marks omitted), as a creditor's interest is obviously superior to that of a transferee to whom property was conveyed fraudulently, *see Mitchell v. Lyons Pro. Servs.,*

3

*Inc.*, 727 F. Supp. 2d 120, 123 (E.D.N.Y. 2010).  In order for a court to "void allegedly fraudulent conveyances" via a motion under CPLR § 5225(b), the creditor must make out the elements of a fraudulent conveyance under New York Debit and Credit Law §§ 273-276.  *Teamsters Loc. 456 Pension, Health & Welfare, Annuity, Educ. & Training, Indus. Advancement & Legal Servs. Funds by Picani v. CRL Transp., Inc.*, No. 18 Civ. 2056, 2020 WL 3619048, at *5 (S.D.N.Y. July 2, 2020) ("*Teamsters Loc. 456*").

## DISCUSSION

LIC seeks relief via Article 52 to reach certain assets that it alleges belong to Defendant Albert Gammal but are held by others, namely: his interest in the Vacation Home, which this Court has already found that he fraudulently transferred to wife, Alice Gammal (who then, with Mr. Gammal, subsequently sold the Vacation Home); his interest in the Brooklyn Property, which he transferred to Alice Gammal and his mother-in-law Sarah Sultan; and his bank account at Santander Bank.

### I.     Threshold Issues

The Gammals raise two threshold issues that they say preclude relief with respect to the Vacation Home and/or the Brooklyn Property: law of the case and res judicata.  The Court takes these issues in turn.[2]

### A.  Law of the Case

The Gammals argue that law of the case precludes Plaintiff's request for relief under Article 52 with respect to the Vacation Home.  In its Trial Order, the Court held that the transfer of Albert Gammal's interest in the Vacation Home to Alice Gammal was fraudulent under New York's

---

[2] The Gammals do not contest the Court's personal jurisdiction over Alice Gammal, Sarah Sultan, and Santander Bank, which the Court finds exists here for substantially the reasons set forth in LIC's Opening Brief.  *See* Pl.'s Mem. at 4-7, ECF No. 197.

Debtor and Collection Law ("DCL") § 273.  *See* Trial Order at 78-84.  But the Court declined to order relief as to that interest because the house had been sold, and the only way to reach the proceeds of the sale representing Albert Gammal's interest in the Home would be through Alice Gammal.  Because she was not named as a defendant in the case, the Court declined to order such relief.  *See id.* at 83.  The Gammals now argues that any relief as to her at this stage would violate law of the case doctrine.

The Gammals misconstrue the scope of the Court's prior ruling.  The Court did *not* hold that relief against Alice Gammal as to the Vacation Home was forever foreclosed.  It simply held that such relief was unavailable through LIC's fraudulent conveyance claim as litigated up until that point because Alice Gammal was a non-party.  The Trial Order said nothing about the availability of relief through Article 52 against Alice Gammal as a transferee of a judgment debtor—nor could it have, as such relief is available only to a *judgment creditor*, which LIC did not become until *after* judgment was entered in its favor.  *See, e.g.*, *Mitchell v. Lyons Pro. Servs., Inc.*, 109 F. Supp. 3d 555, 563 (E.D.N.Y. 2015) ("[T]he proceeding can only be brought by a judgment creditor, not a creditor with a claim, no matter how meritorious, that has not been reduced to judgment."), *aff'd sub nom.*, 819 F.3d 636 (2d Cir. 2016).  Whether or not the Article 52 motion is meritorious such that relief is in fact available is a separate question, addressed below.  But that question was not addressed in the Trial Order.  *See, e.g.*, *Golden Horn Shipping Co. v. Volans Shipping Co.*, No. 14 Civ. 2168, 2017 WL 3535002, at *7 (S.D.N.Y. Aug. 16, 2017).  Indeed, the Trial Order expressly recognized that, while the Court was at that moment "unaware of any other relief that would be appropriate here," LIC could still "seek any other relief" and authorized post-judgment briefing on this issue.  Trial Order at 83-84 n.31.  This motion is therefore not barred by law of the case.

## B. Res Judicata

The Gammals next argue that relief as to both the Vacation Home and the Brooklyn Property is precluded by res judicata, because such claims could have been asserted in the underlying action. *See* Gammals' Opp'n at 4-6. But "claims seeking to enforce prior judgments against parties who were not parties to the prior lawsuit are not considered attempts to re-litigate issues already decided." *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 39 F. Supp. 3d 516, 523 (S.D.N.Y. 2014) (Nathan, J.). Alice Gammal and Sarah Sultan, to whom Albert Gammal transferred his interests in the Vacation Home and/or the Brooklyn Property, were not parties to the underlying case, and so res judicata does not apply to the request for relief presented on this motion.

The Gammals contend that this reasoning is inapplicable here, at least with respect to Alice Gammal, because, although a non-party in the underlying case, she was in privity with Albert Gammal as his spouse, such that, "to all intents and purposes, Alice Gammal WAS a pre-judgment party to this action." Gammals' Opp'n at 6. But courts have routinely permitted post-judgment claims under CPLR § 5225(b) against a non-party to the previous litigation, for example, in the context of veil-piercing where the non-party is alleged to be the alter ego of the judgment debtor, *see Am. Federated Title Corp.*, 39 F. Supp. 3d at 522-24; the Court sees no basis to afford the spouse of a judgment debtor greater protection than a debtor's alter ego. Indeed, Defendants successfully argued after trial that Alice Gammal should escape liability *because* she was a non-party; it would be perverse to now hold that she should escape a post-judgment motion for relief against a non-party under Article 52 on the grounds that she was, for all practical purposes, a party in this case.

Furthermore, "[c]laim preclusion does not bar claims, even between identical parties, that arise after the commencement of the prior action." *Bank of N.Y. v. First Millennium, Inc.*, 607

F.3d 905, 919 (2d Cir. 2010).  And "[f]or a claim to be barred based on the fact that it could have been brought in a prior action, the claim logically must have arisen before the prior action."  *Am. Federated Title Corp.*, 39 F. Supp. 3d at 524.  Here, LIC's Turnover Motion to reach Albert Gammal's transferred assets could not have been brought at the time of the underlying action, because: (1) LIC was unaware of the asset transfers at the time it brought its Amended Complaint in 2022, *see* Am. Compl., ECF No. 21, because the Gammals did not disclose them; LIC only uncovered the transfer of Albert Gammal's interest in the Vacation Home around June 2024, *see* Trial Order at 39; and (2) Article 52 relief is only available to a *judgment* creditor.

The Gammals cite *Universitas Education, LLC v. Benistar*, No. 20 Civ. 738, 2021 WL 965794, at *11 (D. Conn. Mar. 15, 2021), in support of its position that res judicata bars LIC's Article 52 motion.  *See* Gammals' Opp'n at 6.  But that case is inapposite, as it involved a standalone action under Connecticut law (not a motion to enforce a judgment), and the plaintiff in that case had in fact brought two successful post-judgment turnover motions under Article 52 in this District.  *See Universitas Educ., LLC*, 2021 WL 965794, at *2.

Accordingly, res judicata does not bar this motion.

## II.    Albert Gammal's Interest in the Vacation Home

The Court now turns to LIC's request for a Turnover Order with respect to Albert Gammal's interest in the Vacation Home.  The Gammals argue (1) that this request should be denied because Alice Gammal did not engage in fraud; and (2) that any judgment on this issue should be limited to $510,000.  The Court addresses each issue in turn.

First, contrary to the Gammals' arguments, a finding of fraud by the transferee of the property in question is not a prerequisite to turnover relief.  All that is required is that the property be the subject of a fraudulent conveyance.  *See Teamsters Loc. 456*, 2020 WL 3619048, at *5.  Here, there can be no material dispute of fact as to whether Albert Gammal's conveyance of his

interest in the Vacation Home to Alice Gammal was fraudulent, because this Court already found it to be so in its Trial Order. *See* Trial Order at 35-39, 80-84. The Gammals cite *Perrone v. Amato*, No. 09 Civ. 316, 2017 WL 2881136, at *39 (E.D.N.Y. July 5, 2017), in support of their argument that an innocent transferee who is not involved in a fraud cannot be subject to a money judgment under the DCL. *See* Gammals' Opp'n at 7. But *Perrone* did not involve a post-judgment motion under CPLR § 5225(b), and the transferees in that case had rendered services to the debtor and received the subject property as fair consideration for those services. *See id.* at *32-33, 38-39. Here, the Court found that Alice Gammal paid no consideration in exchange for Albert Gammal's share of the Vacation Home. *See* Trial Order at 82. *Perrone* is therefore inapposite.

The second issue is the amount of any judgment in relation to the Vacation Home. Typically, in cases of a fraudulent conveyance, a court can award relief by reversing the conveyance so that the fraudulently transferred assets are restored to the judgment debtor and can be accessed for purposes of satisfying the judgment. *See Jiangsu Changlong Chems. Co. v. Burlington Bio-Med. Corp.*, No. 05 Civ. 2082, 2008 WL 11435610, at *5 (E.D.N.Y. Apr. 9, 2008) (holding that, in ordering relief, a court typically "can vacate and set aside the conveyances of [defendant's] interests to the . . . transferees or beneficiaries if they are fraudulent conveyances under the DCL"), *report and recommendation adopted*, 2008 WL 11435611 (E.D.N.Y. June 25, 2008). Here, however, the fraudulently transferred assets have already been sold to another party, and so the Court can only award a money judgment against the transferee (Alice Gammal) in the amount of the value of the assets at the time of transfer. *See Skillin v. Maibrunn*, 78 N.Y.S. 436, 439 (N.Y. App. Div. 1902) (observing that "where real estate had been fraudulently transferred and resold by the transferee," judgment may be appropriate "against the one who had sold the property for its value at the time it was conveyed to him") (internal quotation marks and citation omitted), *aff'd*, 68 N.E. 1124 (N.Y. 1903).

8

The issue then, is the value of Mr. Gammal's interest in the Vacation Home at the time of the fraudulent transfer. And there can be no dispute of fact on this issue, because the Trial Order already made a finding in this regard. The Court found that the market value of the home at the time of the transfer was $2.84 million, meaning that Mr. Gammal's interest in it was worth $1.42 million. *See* Trial Order at 84 n.32. The Gammals argue that this figure should be discounted because the Vacation Home was subject to a mortgage at the time, in the amount of $1.82 million. *See* Gammals' Opp'n at 8. The Gammals are correct that courts have calculated the value of a fraudulently transferred interest in real property by subtracting the value of an outstanding mortgage. *See In re Borriello*, 329 B.R. 367, 381 (Bankr. E.D.N.Y. 2005). Thus, subtracting the amount of the mortgage from the estimated value of the home produces a figure of $1.02 million in equity; Albert Gammal's 50% interest in the equity of the home at time was therefore $510,000.

As the Court noted in the Trial Order, the mortgage here was taken out a mere eleven days before the fraudulent conveyance of the property to Alice Gammal, allowing the Gammals to "cash out" some of the home's equity. Trial Order at 35.[3] The mortgage therefore appears to be simply another step by Albert Gammal to dissipate assets or otherwise shield them from creditors.[4] But that is not a reason to ignore the amount of the mortgage for purposes of this motion. The Article 52 relief requested here is against Alice Gammal, and such relief is limited to Albert Gammal's interest in the Vacation Home at the time of the fraudulent transfer of that interest to her. And the

---

[3] The timing of the mortgage in relation to the fraudulent transfer is particularly troubling. But it does not appear to change the fact that any judgment here should be limited to Mr. Gammal's share of the market value of the Vacation Home minus the value of the mortgage. The mortgage in *In re Borriello*, for example, was taken out approximately one month before the fraudulent transfer in that case. *See* 329 B.R. at 370-71, 381.

[4] To be clear, given the summary judgment-like posture, the Court is not in a position to make formal factual findings on this point given the absence of evidence in the record as to the purpose of the mortgage.

value of that interest is based on net equity at that point in time, which necessarily takes into account the amount of the mortgage. *See In re Borriello*, 329 B.R. at 381;[5] *cf. Marine Midland Bank v. Murkoff*, 508 N.Y.S.2d 17, 25 (N.Y. App. Div. 1986) ("The creditor's remedy in a fraudulent conveyance action is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance.").

LIC appears to argue that, in calculating Albert Gammal's interest in the Vacation Home, the Court should take into account the proceeds of the mortgage cashout. But there is nothing in the record indicating that any of the proceeds from mortgage that belonged to Albert Gammal were then fraudulently transferred from him to Alice Gammal, such that those proceeds should be incorporated into a judgment against *her* as the transferee of fraudulently conveyed assets. Put another way, any cash received and retained by Albert Gammal in taking out the mortgage should already be subject to the underlying judgment against him in this case; and to the extent that Albert Gammal may have transferred such proceeds to Alice Gammal (or to anyone else), LIC would have to demonstrate that such transfer was fraudulent in order to obtain Article 52 relief as to those funds. Because the current record is currently devoid of any such evidence, the Court cannot grant relief as to those funds at this time. *Cf. Marine Midland Bank*, 508 N.Y.S.2d at 25 ("Current public policy provides no basis for the creation of new common-law remedies against evasive debtors.")

Accordingly, Article 52 relief against Alice Gammal with respect to the Vacation Home is **GRANTED IN PART**, only up to the amount of $510,000.

---

[5] LIC correctly notes that *State Farm Mut. Auto Ins. Co. v. Grofman*, No. 04 Civ. 2609, 2015 WL 269529, at *7 (E.D.N.Y. Jan. 21, 2015), does not support the Gammals' position because it concerned fraudulent conveyance of the net proceeds of the sale of property, not of the property itself. *See* Pl.'s Reply in Supp. of Turnover Mot. at 9, ECF No. 227.

### III.    The Brooklyn Property

The Court now turns to LIC's request for a Turnover Order with respect to Albert Gammal's interest in the Brooklyn Property. In response, the Gammals argue that (1) LIC has not established that the conveyance of the Brooklyn Property was fraudulent; (2) LIC has not provided evidence of the value of the Brooklyn Property; and (3) any judgment with respect to the Brooklyn Property should be limited to $166,666, for various reasons including its current net value and the Homestead Exception. The Court addresses these points in turn.

With respect to whether Albert Gammal's transfer of his interest in the Brooklyn Property amounted to a fraudulent conveyance under New York law, this Court's Trial Order did not make a formal determination in this regard. It did, however, make various factual findings about this transfer, which cannot now be genuinely disputed on this motion. *See* Trial Order at 36, 82. These now indisputable facts establish the elements of a fraudulent transfer under New York law, *see* N.Y. DEBT. & CRED. LAW § 273(a) (McKinney), as follows:

- First, the transfer was made with <u>actual intent to hinder, delay or defraud a creditor of the debtor</u>, rather than for Albert Gammal's proffered conclusory explanation that it was made for "estate planning" purposes. There was no evidence in the record, other than what the Court found was Albert Gammal's non-credible testimony, that the transfer was made for estate planning purposes. Trial Order at 36. There were no documents regarding any purported estate planning in the record, and no prior conversations between Albert and Alice Gammal regarding estate planning. *Id.* These facts, combined with the circumstances around the transfer—namely, that it occurred on the same day as the fraudulent transfer of his interest in the Vacation Home, that it happened shortly after this lawsuit commenced and while the Gammals were facing multiple other lawsuits for non-payment—compelled the Court to find that the "only logical conclusion is that Gammal was seeking to hide assets in anticipation of being named in this lawsuit." *Id.* at 36-37. That factual finding cannot be genuinely disputed now.

- Second, there is no factual dispute that Albert Gammal <u>did not receive a reasonably equivalent value in exchange</u> for the transfer of his one-third interest in the Brooklyn Property—in fact, he was given no consideration for it at all. *See id.* at 36.

- Third, during this period, Albert Gammal was engaged in various transactions for which <u>his remaining assets were unreasonably small</u>. *See id.* at 24-32 (describing

11

undercapitalization and asset-stripping of Defendant A Base IX, of which Albert Gammal was an alter ego, justifying piercing of the corporate veil, *see id.* at 65-78); *id.* at 82 (finding that purpose of property transfers was to hide assets). Again, these factual findings are no longer subject to genuine dispute.

Accordingly, there can be no genuine dispute that Albert Gammal's conveyance of his one-third interest in the Brooklyn Property was fraudulent under the New York DCL.[6]

The Court now turns to the Gammals' various arguments concerning the value of the Brooklyn Property, which, unlike the Vacation Home, has not been sold. There is no dispute that Albert Gammal had a one-third interest in the property and conveyed it to Alice Gammal and Sarah Sultan. LIC submits documentary evidence in support of that point. *See* Buckey Decl. in Supp. of Turnover Mot., Exs. T (original deed), U (transfer deed), ECF Nos. 195-21, 195-22. And the Gammals concede it. *See* Gammals' Opp'n at 14. Thus, even without evidence from LIC regarding the value of the Brooklyn Property, the Court can order relief by setting aside the fraudulent transfer, to restore the status quo ante. *See Jiangsu Changlong Chems. Co.*, 2008 WL 11435610, at *5. The Gammals' arguments regarding the value of the home and seeking to limit the amount of any money judgment, *see* Gammals' Opp'n at 14, are therefore unavailing, as the relief here will not be in the form of a money judgment against transferees, but will simply set aside the transfer itself, so that Albert Gammal's interest in the property may be accessible for purposes of satisfying his judgment debt in this case.

Once the transfer is set aside, the question is what comes next. LIC requests that, pursuant to CPLR §§ 5206(e), 5236 and 5238, the Court direct the execution sale by the Kings County

---

[6] It therefore makes no difference whether the evidentiary standard for establishing a fraudulent transfer claim is a preponderance of the evidence or clear and convincing evidence, with the Gammals unsurprisingly urging the latter. *See* Gammals' Opp'n at 10-11. Given the post-trial factual findings—which were based on the absence of any evidence in support of Albert Gammal's "estate planning" explanation—there can be no genuine dispute that LIC has established the elements of fraudulent transfer with respect to Albert Gammal's interest in the Brooklyn Property.

Sheriff of Albert Gammal's interest in the Brooklyn Property, and disposition of the proceeds pursuant to further order. *See* Pl.'s Mem. at 14. The Gammals argue that such relief is inappropriate with respect to the Brooklyn Property, because forcing a sale of the home would deprive non-parties Alice Gammal and Sarah Sultan—who, aside from the fraudulent conveyance of Albert Gammal's interest in the Property to them, have joint tenancy ownership rights—of their home. Gammals' Opp'n at 13-14. But even if that were a basis for denying the motion, LIC does not, at this time, seek an order directing a sale of the Brooklyn Property in its entirety—it seeks an order directing a sale only of "Albert Gammal's [one-third] interest" in it. Turnover Mot. at 2. "The law in New York clearly permits a husband's interest in a tenancy by the entirety to be sold under execution upon a judgment against him. The purchaser at such sale becomes a tenant in common with the debtor's wife, subject to her right of survivorship and is entitled to share in the rents and profits, but not the occupancy." *In re Weiss*, 4 B.R. 327, 330 (Bankr. S.D.N.Y. 1980). The Gammals offer no argument as to why this relief cannot or should not be granted; by failing to respond to it directly, they effectively concede it. The Court will therefore order the execution sale of Albert Gammal's interest in the Brooklyn Property and disposition of the proceeds, subject to the $150,000 homestead exemption under CPLR § 5206, towards satisfaction of the Judgment rendered by this Court on July 22, 2025 against him.

## IV.   Albert Gammal's Santander Bank Account

LIC also requests a turnover with respect to funds held in Albert Gammal's Santander Bank account. The Gammals do not dispute that Albert Gammal has an interest in these funds, or that LIC has superior rights to those funds than Albert Gammal as his creditor with a valid judgment against him. Therefore, LIC is entitled to turnover of the funds. *See, e.g.*, *Axginc Corp. v. Plaza Automall, Ltd.*, No. 14 Civ. 4648, 2022 WL 1591054, at *4 (E.D.N.Y. May 19, 2022). Accordingly, this request is **GRANTED**.

## CONCLUSION

LIC's Turnover Motion is **GRANTED IN PART and DENIED IN PART**.  Specifically, it is granted: (1) with respect to Alice Gammal up to the value of Albert Gammal's net interest in the Vacation Home at the time of the fraudulent transfer, accounting for the mortgage on the Home at that time; (2) the Brooklyn Property, such that the transfer of Albert Gammal's interest in the Property to Alice Gammal and Sarah Sultan is set aside; and (3) Albert Gammal's Santander Bank Account.

It is HEREBY ORDERED that:

(1) LIC is **GRANTED** a money judgment against Alice Gammal, the wife of Defendant and Judgment Debtor Albert Gammal, in the amount of $510,000, which represents the value of Mr. Gammal's interest in real property known as 103 Grant Avenue, Deal, New Jersey as of February 3, 2022, which was fraudulently transferred to Alice Gammal on that date, plus pre-judgment interest at 9% from February 3, 2022 through the date judgment is entered;

(2) the transfer of Albert Gammal's interest in real property located at 1350 East 4th Street, Brooklyn, New York to Alice Gammal and Sarah Sultan on February 3, 2022, is **SET ASIDE** as fraudulent.  The Court further **DIRECTS** the execution sale of Albert Gammal's interest in this Property and disposition of the proceeds, subject to the $150,000 homestead exemption under CPLR § 5206, and **ADJUDGES** that the Judgment rendered by this Court on July 22, 2025 for $7,700,539.46 against Albert Gammal, is a lien on the surplus monies from the sale of Albert Gammal's interest in the Brooklyn Property; and

(C) Santander Bank, N.A., pursuant to CPLR §§ 5225(b) and 5227, is **DIRECTED** to turn over all funds in the personal checking account owned by Judgment Debtor Albert Gammal.

14

The Clerk of Court is respectfully directed to terminate ECF Nos. 194 and 201.[7]


SO ORDERED.

Dated: April 6, 2026

New York, New York


DALE E. HO
United States District Judge

---

[7] ECF No. 201 is a motion for extension of time to respond to this motion, which the Court granted. *See* Order dated Sept. 26, 2025, ECF No. 218.